Proceed to the first case on the argument calendar, Case 25-668, Vega v. GEICO Choice Insurance Company. Good morning. Good morning. That's better. Now we can see you. That's what happens when you're short. Good morning, Your Honors. May it please the Court. My name is Shannon Kilpatrick. I'm here on behalf of the appellants, the Ortiz-Vega et al. I would ask for five minutes of rebuttal, if that's permissible. We're here asking this Court to reverse the District Court, granting the order granting summary judgment to GEICO, and dismissing all plaintiff's claims. The case at base turns on the reasonableness of GEICO's actions, which is a classic jury question. The District Court made errors that fall into two camps. The first is that it improperly resolved issues of fact in favor of GEICO, who was the moving party, or drew inferences in favor of GEICO, who's the moving party. And second, it improperly disregarded plaintiff's expert testimony. At its core, the District Court's ruling rests on the hotly disputed factual premise that once GEICO tendered its limits in theory, no reasonable jury could find bad faith on the part of GEICO. Why do you say in theory? Because no money ever went to the plaintiffs, and so the settlement itself was not consummated. Wasn't GEICO willing to settle? GEICO said it was willing to pay the limits, but then never sent the money because it put all sorts of... I thought there were no... They needed the minor compromise orders and the claimant's release. They never got those, right? Well, the sequence is the issue. The sequence of what GEICO insisted had to happen is what plaintiffs are disputing. And the evidence we've got is not just the expert testimony, but it's also GEICO's own papers, what they were saying to themselves internally. Well, do you think it was unreasonable for GEICO to ask for releases? Not at first. Okay, well, how about the compromise order? Was that unreasonable? Again, it's the sequence. It's the timing. Before we get into the sequence, just in terms of what they were asking, was the ask a permissible ask? No, of course not. So they tender the limits, they say we need the releases, and now you're saying there's a timing issue. What I'm suggesting is that the timing of when the money went from GEICO to the plaintiffs is what was at issue here. How can they just pay $50,000 without a release? Because there's all sorts of ways that you can accomplish getting the money to the plaintiffs without them actually dispersing the money. It happens routinely. The expert testified that you could send the money, the check to the plaintiffs with a letter saying, please do not disperse this until all of the legal issues with the documentation are worked out. So that just seems... What good does that do? Because then the plaintiffs know the money is there. And instead... GEICO's not going anywhere. GEICO's not going anywhere, but plaintiffs are under the obligation to do everything that GEICO says they have to do. Let me take you back a minute.  You said that the district court overlooked or disregarded or that there is a material issue of fact. What is it? The issue of material fact is whether under Idaho law, GEICO breached its duty of good faith and whether it gave... What's the factual dispute that suggests that they violated Idaho law? That GEICO insisted on doing everything in the order in which it said when there were other ways to accomplish... Is there a dispute over whether or not they didn't insist and do it in a certain way? They did. There's no dispute. I want to know what the fact... What are the two versions of fact that you contender and play here? The two versions of facts are from plaintiff's perspective. GEICO unreasonably insisted on doing things in a certain order and that plaintiffs gave warning to GEICO on multiple occasions. Okay, hold on. Stop right there. So GEICO insisted on following a certain way of accomplishing the settlement, right? Now, is there any dispute about that? I think the answer is no. Okay, right. That's kind of what I thought.  Right, yeah. That's kind of what I thought. Okay, now. Okay, so what's the next issue that might be... There might be a factual dispute? Whether that means there was a breach of GEICO's duty. Whether insisting on the specific sequence... If there's no dispute of fact, doesn't that become a question of law? No, because the issue of fact is whether GEICO breached its duties. Okay. And so these facts form the basis of the argument either way, but the ultimate issue of fact is breach. And so because this is about whether Bybee gave the required consideration to... I'm sorry, whether GEICO gave Bybee the required consideration it's required to under Beshara and Idaho law, it requires... It's a fact-intensive inquiry. It requires looking at what GEICO knew and when, what GEICO was saying internally amongst itself, what GEICO's training said about how they're supposed to handle potentially excess claims. I guess where is the bad faith? So there's this terrible accident, but they immediately offer to pay the full amount and they just need to know who is this going to, how much to each person, let's get the paperwork done. And there were all these communications back and forth. And then the council at the time wasn't sending the documents that they needed. Well, that is how... That's GEICO's version of events. That is actually what happened, right? I mean, that's not disputed. The meaning of the sequence is what's at dispute. The district court and GEICO argue that that's just the way things happen and that's supposed to be, but there's no Idaho law, Idaho statute that says things have to happen in a certain way. And so GEICO... So what you think should have happened is they should have paid the money, but the client, the victims of this should have then not dispersed the money because that would be a problem if there weren't releases. So the money should have been transmitted, but then held somehow in trust while the rest of the paperwork worked out? That's one option, yes. The other option is to deposit the funds in the registry of the court. That way the plaintiffs know the money is actually there. The other option is what's called a friendly suit, which accomplishes the same thing. Has the court oversee the process? Are there any number of ways? The fourth option would be, GEICO says, I'm willing to pay the money, just send me these release papers. So when you say there's no Idaho law that tells you which sequence has to be done, where does the bad faith come in? Because there is no law or rule that says the plaintiff has to prepare the release. The plaintiff has to do X, Y, and Z. The assumption is that that's the way it is, but that's an assumption, which means it's drawing inferences in favor of GEICO. But if there's no required sequence and they've tendered the full amount, you're in effect saying to win, you would have to show that GEICO would be required to advantage itself of one of the other options. No, I'm saying that under industry standards, as our expert explained, that is precisely what has to happen when you're faced with this. When GEICO is faced with a situation involving 100 percent liability on the fault of their insured, massive excess verdict potential, agreement about where the money is going and who is going to, it's just a matter of getting the documents in order. Was it even clear who it was going to? It seemed like that was also changing, too, in terms of who exactly was going to be taking what portions, given all the different family members involved. Right. The end of March is when Mr. Rockstall, the plaintiff's original lawyer, sent a letter saying here's who it's going to go to and explained, well, maybe that was later in deposition testimony, explained that he was trying to get the most money that would not be reduced by liens or other things like that. So he was trying to get the most money to the family to do the most good. And so that's when GEICO knew who the money was supposed to go to. And everything else was essentially disputes about paperwork that could be worked out. So let me ask you this. I still don't quite understand. Why was it so important or why is it so critical that they knew or that they be alerted that the money is either in a trust or trust account or that we just need these paperwork? Why is that so critical? Because from a plaintiff's perspective, GEICO was dragging its feet. Well, GEICO was willing to pay. There's a difference between saying they're willing to pay and actually paying, and that's the key. Well, they really had no choice. They had to pay. Their insurer was completely liable. They said so. They found their insurer to be 100 percent liable for this tragic accident involving alcohol. Agreed. Yes. But the problem is and I'm sorry. Let me ask you this. Judge McEwen at the very outset suggested this. Why was it so unreasonable for GEICO to want a release from the children, you know, a minor's compromise order signed by a judge? One of the children was asked, GEICO had been told that one of the children would release everything and in return would get nothing. Correct.   I mean, that is, you know, the superior court judge, whoever is going to sign off on that release would ask a lot of questions. Why is this child not getting anything? GEICO has to be careful for good reasons, for their own and for their clients. Agreed. I agree that a release is something that it was reasonable for GEICO to ask for. But, again, it's the sequence. It's what happens when. It didn't have to happen in this order according to our expert testimony, according to GEICO's own documentation, because in July they changed their mind and decided to pay without having the paperwork in order. And so that is evidence in and of itself that creates a genuine issue of maternity. Maybe there are insurance companies that would release funds under those circumstances, but I think it would be a rare instance. It's not. Because the insurance company has to be sure that their client, that their insured is not going to be subject to any further litigation. Agreed. But given the ethics rules that govern lawyer behavior, there's that added incentive. And I can just say from personal experience. But a lawyer behavior here is the lawyer didn't get the documents in order, right? That's GEICO's argument. Our argument is that that shouldn't matter in this situation. Under the circumstances here. They sent them and then there's like radio silence on the part of a lawyer, right? They didn't send any documents. They sent one release that was return signed. And they said what they needed. Right. But, again, that necessarily buys into GEICO's argument that that had to be done before the money could be given over. And that's fundamentally where we're suggesting that the material fact was. That creates a genuine issue of material fact as to breach. I'm into my rebuttal time, so I'll just reserve. Thank you. Thank you. Good morning, Your Honors. I'm Kelly Dove. I represent GEICO Choice. I have to note at the outset that the idea that now what we're talking about is the sequence of events, I think, is a little bit of a newly framed argument. I know delay was certainly something that appellants had focused on. But this idea that we chose a sequence of events that was unreasonable, I don't think, is something that really comes through loud and clear in the briefing as it exists. The idea that we should have put money in trust or deposited money with the court, these are relatively new suggestions to my ear. But, regardless, we agree that there's really no disputes of fact here. GEICO, as Your Honors clearly have read, learns of the accident. January 8th, Ms. Bybee is arrested. January 10th, GEICO deems her 100% at fault. January 12th, attempts to contact Ms. Bybee. January 16th, offers claimants policy limits to settle with all seven claimants. And while appellants are entitled to legal and, I mean, factual inferences in their favor, they're not entitled to legal inferences in their favor. And I think one of the most direct ways to address this appeal is by virtue of the minor's compromises. Because the district court ruled unequivocally on page 17 of the excerpts that GEICO lacked the necessary documents to pay any of the claims because under Idaho law, compromise orders are required for any settlement involving a child. And you will not find any discussion of that Idaho statute or that ruling by the district court anywhere in the appellant's briefing. There is no dispute, as I've heard today, that a minor's compromise is required before GEICO can pay. And that was explicitly decided by the district court. It has not been addressed or challenged on appeal. And because that is a legal requirement under Idaho law that has not been challenged, I think that's a very direct path to affirmance in this case. The suggestion is made that maybe the money could have just been put in a trust of some kind. Even if this is a new argument, how do you respond? I think the court's questions I think made sense to me, which is I don't know what else that would get appellants. We had the money. We offered to pay starting January 16th. We asked many times for the releases and the compromises so we could pay, so we could get this taken care of. Is there not like a standard release form that GEICO would send? How do you go about doing these kinds of deals? Yes, well, I think because all of the claimants or all of the claimants that are appellants here today were represented by counsel, I think they were just trying to get it done with counsel. And counsel testified that he had a form compromised. He filled them out a couple different ways, but they were incorrect. One of them I think listed an all-state policy erroneously. Another one referred to an incorrect case. Finally, GEICO did hire outside counsel who prepared releases and sent them to Mr. Roxtal, and that happened in August 2018 to say, here, we've prepared the releases for you. Please just take care of these, and we'll issue payment and get this taken care of. And how long between when that happened versus when the initial offer to pay, how many months was that? So that was from January 16th was when we initially offered to pay, and I think at that point, Mr. Roxtal said, fine, we'll get. He offered, I believe, like there was no disagreement about the terms of the settlement about how all seven claimants would be involved. And by the time GEICO actually hired outside counsel to go ahead and prepare the releases to try to expedite the process was in that summer after there had just already been so much back and forth between Mr. Roxtal and GEICO about just trying to get this done. But does GEICO not have just a standard release? I mean, you have to sign a release to do all kinds of things. Does it not just have a form that it relies on that it would send over? And I don't think the releases were an issue here as much as the compromises. Those compromises have to be signed by a Superior Court judge, right? Yes. They have to be taken to court. So exactly. And so since the minors here, the claimants, were represented, that was really in Mr. Roxtal's wheelhouse to take those to court and get them handled. But because he could not seem to get them drafted properly or provide them, finally GEICO drafted them and sent them to him and said, here, we've prepared these for you. So now all you have to do is take them to court and get them approved and have the responsible adult sign them. And yet that never happened. And then at that point Mr. Roxtal then started sort of moving the goalposts as far as maybe removing some of the claimants that would be involved in the settlement. And at that point GEICO just very promptly hired Ms. Bybee, her own counsel, and then subsequently hired Ms. Bybee, additional outside counsel that was completely unrelated to us that assisted Ms. Bybee in actually negotiating the very large settlement that we're now litigating today. So we just do not see any hint of bad faith here whatsoever in how GEICO handled this. And I think the district court was very careful. It held an extensive hearing on summary judgment. The expert issue was discussed at length in the hearing. And we would submit that the expert's opinion here really infringes on legal territory. I mean, he discusses things as if these are industry standards, but what he's really discussing about attempting to reach global settlements is well covered in case law and well within the realm of legal decision making. And we don't think there's any bad faith here under Beshara. The district court very carefully distinguished Beshara, which we, of course, endorse. And there were just a lot of factual differences between this case and Beshara. GEICO never refused or declined an opportunity to settle. Right from out of the gate, they were immediately willing to put up policy limits. They just needed to make sure that Ms. Bybee was protected by making sure that all seven claimants were accounted for, that minors' compromises were handled for the minors, and that things were done to protect Ms. Bybee. And so as far as the sequence of events goes, too, as much as this is a tragic situation where the appellants are standing in Ms. Bybee's shoes, the inquiry has to be, did GEICO treat Ms. Bybee properly? Did GEICO protect her interests? And by doing things in this, quote, sequence of events, where it wanted to make sure that everything was handled appropriately, that releases would have been obtained. And, again, I think releases would have been easy to obtain, but the minors' compromises were a real holdup. And those things are not just box checking, but they're critical for completing this settlement. And so there's just no indication here under any of the Beshara factors or any of the facts that GEICO mishandled this claim or failed to protect Ms. Bybee. I'm happy to answer additional questions. Otherwise, I'll give back the rest of my time. Thank you. Thank you very much. On the minors' compromise issue, I think we need to be careful with language because counsel said something like before GEICO can pay, there has to be a minors' compromise in place. And I don't think that's actually what the statute says. Again, this is, all of this, as long as it happens at some point, that's what satisfies the legal requirements. Beyond that, then we have industry custom, industry standards about how things are supposed to happen in particular. But just to be clear, the child can't receive the payment until the compromise order is taken care of? Correct. And that's why things like depositing the money into the registry of the court or having the money held in trust accomplishes the same goals because, again, from plaintiff's perspective, this is about unreasonable delay. But they still wouldn't have gotten the money. I mean, the delay would have happened until the compromise order was signed. But from the plaintiff's perspective, the money was in a place where they could access. Whereas with GEICO, yes, ultimately they might have paid the money, but it's about time, how much time has passed. From January to when they finally hired an outside counsel in July. And then in August is when they finally started sending out documentation. But at that point, they knew, GEICO knew, the plaintiffs had said, we need this to be wrapped up by the time of the sentencing, by the time of restitution. Because if not, if this settlement isn't finalized, then we're going to seek restitution. But if it is, then we won't. And that is, again, something addressed by one of the plaintiff's experts, that under Idaho practices, it's common for things like that, for arrangements like that to happen. Just as an aside, I'm just curious after reading all of this, is there any claim made against Mr. Roxdale? I don't know. There's nothing in the record about that. I have not heard anything about that. So I can't answer that question. Because it all seemed like matters that could have been easily taken care of. It does, but, you know, each party lays the fault at the feet of the other. So, yes, yes. And in conclusion, I just wanted to point out that GEICO has a lot of arguments about why it didn't commit bad faith. And those are all arguments it is completely entitled to make to a jury in this case, to explain its behavior, to point the finger at Mr. Roxdale. That's fair game at a trial. But it's inappropriate when we've got factual disputes, as we do here, and expert testimony saying these are industry standards that GEICO violated. That's an issue that needs to go to the jury. So we ask for this court to reverse and remand. Thank you. Thank you. Thank you, Ms. Kilpatrick. Ms. Dove, thank you for the briefing and arguments. This matter is submitted.
judges: McKEOWN, PAEZ, BRESS